**NORMA A. AGUILAR**
California State Bar No. 211088
**Federal Defenders of San Diego, Inc.**
225 Broadway, Suite 900
San Diego, CA 92101-5030
(619) 234-8467/Fax: (619) 687-2666
E-Mail: norma_aguilar@fd.org

Attorneys for Ms. Heredia-Vargas

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE DANA M. SABRAW)**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MARGARITA HEREDIA-VARGAS,<br><br>Defendant. | ) CASE NO. 07CR3415-DMS<br>)<br>) DATE:  MARCH 7, 2008<br>) TIME:  11:00 A.M.<br>)<br>) STATEMENT OF FACTS AND<br>) MEMORANDUM OF POINTS AND<br>) AUTHORITIES IN SUPPORT OF<br>) DEFENDANT'S MOTIONS<br>)<br>) |

## **STATEMENT OF FACTS**[1]

On December 8, 2007, agents from the Bureau of Land Management (BLM), the Drug
Enforcement Administration (DEA), and the Federal Bureau of Investigation (FBI) set up
surveillance in a campground near the Imperial Sand Dunes.  The Imperial Sand Dunes are a
public, recreational area that is used for camping and riding All-Terrain vehicles (commonly
called ATVs).  While the agents were conducting surveillance, they noticed that the campground

---

[1] Unless otherwise stated, the "facts" referenced in these papers come from government-produced discovery that the defense continues to investigate.  Ms. Heredia-Vargas does not admit the accuracy of this information and reserves the right to challenge it at any time.  Indeed, the events which are described in discovery and in these statement of facts took place after dark, in a remote area with no ready source of light.  Ms. Heredia-Vargas questions the accuracy of the events as describes by the agents.

had an RV and an SUV and they saw co-defendants Christian Maria Rodriguez, Adan Magaña, Martin Lozano Vargas and Jesus Trapero Zazueta near the campground.[2]

Shortly after 8:00 p.m., the agents claim to have been able to see ATVs leave the campground and head south, returning after a few minutes with bundles attached.  After seeing the bundles transferred from the ATVs, to a trailer, and then again into the RV, agents approached the RV shortly before midnight.  They ordered everybody out of the RV.  All five defendants left the RV and were detained.  Without seeking consent to search, the agents then went inside the RV and conducted a search.  Hidden inside the RV were packages that contained a substance that tested positive for marijuana.

Ms. Heredia-Vargas was interrogated at 12:33 a.m.  In her statement she denied involvement in the offense.

The January 2007 Grand Jury returned an indictment against Ms. Heredia-Vargas, charging her with knowingly and intentionally possess, with intent to distribute, 382.9 kilograms of marijuana, in violation of 21 U.S.C. § 841.

---

[2]    None of the discovery so far provided by the Government indicates that the agents had seen Ms. Heredia-Vargas before she was later removed from the RV.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## THE INDICTMENT SHOULD BE DISMISSED BECAUSE THE INSTRUCTIONS PROVIDED TO THE JANUARY 2007 GRAND JURY RUN AFOUL OF BOTH *NAVARRO-VARGAS* AND *WILLIAMS*.

### A.    Introduction

The indictment in the instant case was returned by the January 2007 grand jury.  That grand jury was instructed by the Honorable Larry A. Burns, United States District Court Judge on January 11, 2007.  See Reporter's Partial Transcript of the Proceedings, dated January 11, 2007, a copy of which is attached hereto as Exhibit A.  Judge Burns' instructions deviate from the instructions at issue in the major Ninth Circuit cases challenging a form grand jury instruction previously given in this district in several ways.[3]

After repeatedly emphasizing to the grand jurors that probable cause determination was their sole responsibility, see Ex. A at 3, 3-4, 5,[4] Judge Burns instructed the grand jurors that they were forbidden "from judg[ing] the wisdom of the criminal laws enacted by Congress; that is, whether or not there should be a federal law or should not be a federal law designating certain activity [as] criminal is not up to you."  See id. at 8.  The instructions go beyond that, however, and tell the grand jurors that, should "you disagree with that judgment made by Congress, then your option is not to say 'well, I'm going to vote against indicting even though I think that the evidence is sufficient' or 'I'm going to vote in favor of even though the evidence may be insufficient.'"  *See id.* at 8-9.  Thus, the instruction flatly bars the grand jury from declining to indict because the grand jurors disagree with a proposed prosecution.

---

[3]    See, e.g., United States v. Cortez-Rivera, 454 F.3d 1038 (9th Cir. 2006); United States v. Navarro-Vargas, 408 F.3d 1184 (9th Cir.) (en banc), cert. denied, 126 S. Ct. 736 (2005) (Navarro-Vargas II); United States v. Navarro-Vargas, 367 F.3d 896 (9th Cir. 2004)(Navarro-Vargas I); United States v. Marcucci, 299 F.3d 1156 (9th Cir. 2002) (per curiam).  Ms. Heredia-Vargas has already moved to dismiss under these cases, but has acknowledged that the rulings in them did not support her position.  Having actually read the 2007 instructions, Ms. Heredia-Vargas now believes that those cases do not permit the excesses here.

[4]    See also id. at 20 ("You're all about probable cause.").

Immediately before limiting the grand jurors' powers in the way just described, Judge Burns referred to an instance in the grand juror selection process in which he excused three potential jurors. See id. at 8.

> I've gone over this with a couple of people. You understood from the questions and answers that a couple of people were excused, I think three in this case, because they could not adhere to the principle that I'm about to tell you.

Id. That "principle" was Judge Burns' discussion of the grand jurors' inability to give effect to their disagreement with Congress. See id. at 8-9.[5] Thus, Judge Burns not only instructed the grand jurors on his view of their discretion; he enforced that view on pain of being excused from service as a grand juror.

In addition to his instructions on the authority to choose not to indict, Judge Burns also assured the grand jurors that prosecutors would present to them evidence that tended to undercut probable cause. See id. at 20.[6]

> Now, again, this emphasizes the difference between the function of the grand jury and the trial jury. You're all about probable cause. If you think that there's evidence out there that might cause you to say "well, I don't think probable cause exists," then it's incumbent upon you to hear that evidence as well. As I told you, in most instances, *the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence.*

Id. (emphasis added).[7] The district court later returned to the notion of the prosecutors and their duties, advising the grand jurors that they "can expect that the U.S. Attorneys that will appear in from of [them] will be candid, they'll be honest, and . . . they'll act in good faith in all matters presented to you." See id. at 27.

This motion follows.

---

[5]    Counsel has ordered the grand jury selection transcript. Counsel understands that the court reporter has refused the prepare the transcript. This Court should order that the transcript be prepared. Because Fed.R.Crim.P. 6 permits challenges to grand jurors by the parties, the selection process cannot be secret. At any rate, this Court should also order disclosure under rule 6(e).

[6]    These instructions were provided in the midst of several comments that praised the United States attorney's office and prosecutors in general.

[7]    The "in most instances" language suggests that there may be some limit on this principle. Again, counsel has ordered the full transcript, and it will likely resolve the question posed in the instant footnote.

**B.     *Navarro-Vargas* Establishes Limits on the Ability of Judges to Constrain the Powers of the Grand Jury.**

The Ninth Circuit has, over vigorous dissents, rejected challenges to various instructions given to grand jurors in the Southern District of California.  See Navarro-Vargas II, 408 F.3d 1184.  While the Ninth Circuit has thus far (narrowly) rejected such challenges, it has, in the course of adopting a highly formalistic approach[8] to the problems posed by the instructions, endorsed many of the substantive arguments raised by the defendants in those cases.  The district court's instructions cannot be reconciled with the role of the grand jury as set forth in Navarro-Vargas II.

For instance, with respect to the grand jury's relationship with the prosecution, the Navarro-Vargas II majority acknowledges that the two institutions perform similar functions: "'the public prosecutor, in deciding whether a particular prosecution shall be instituted or followed up, performs much the same function as a grand jury.'"  Navarro-Vargas II, 408 F.3d at 1200 (quoting Butz v. Economou, 438 U.S. 478, 510 (1978)).  Accord Navarro-Vargas I, 367 F.3d at 900 (Kozinski, J., dissenting) (The grand jury's discretion in this regard "is most accurately described as prosecutorial.").  See also Navarro-Vargas II, 408 F.3d at 1213 (Hawkins, J., dissenting).  It recognizes that the prosecutor is not obligated to proceed on any indictment or presentment returned by a grand jury, id., but also that "the grand jury has no obligation to prepare a presentment or to return an indictment drafted by the prosecutor."  Id.  See Niki Kuckes, The Democratic Prosecutor: Explaining the Constitutional Function of the Federal Grand Jury, 94 Geo. L.J. 1265, 1302 (2006) (the grand jury's discretion not to indict was "'arguably . . . the most important attribute of grand jury review from the perspective of those who insisted that a grand jury clause be included in the Bill of Rights'") (quoting Wayne LaFave et al., Criminal Procedure § 15.2(g) (2d ed. 1999)).

Indeed, the Navarro-Vargas II majority agrees that the grand jury possesses all the attributes set forth in Vasquez v. Hillery, 474 U.S. 254 (1986).  See id.

---

8     See Navarro-Vargas II, 408 F.3d at 1210-11 (Hawkins, J., dissenting) (criticizing the majority because "[t]he instruction's use of the word 'should' is most likely to be understood as imposing an inflexible 'duty or obligation' on grand jurors, and thus to circumscribe the grand jury's constitutional independence.").

> The grand jury thus determines not only whether probable cause exists, but also whether to "charge a greater offense or a lesser offense; numerous counts or a single count; and perhaps most significant of all, a capital offense or a non-capital offense -- all on the basis of the same facts.  And, significantly, the grand jury may refuse to return an indictment even "'where a conviction can be obtained.'"

Id. (quoting Vasquez, 474 U.S. at 263).  The Supreme Court has itself reaffirmed Vasquez's description of the grand jury's attributes in Campbell v. Louisiana, 523 U.S. 392 (1998), noting that the grand jury "controls not only the initial decision to indict, but also significant questions such as how many counts to charge and whether to charge a greater or lesser offense, including the important decision whether to charge a capital crime."  Id. at 399 (citing Vasquez, 474 U.S. at 263).

Judge Hawkins notes that the Navarro-Vargas II majority accepts the major premise of Vasquez: "the majority agrees that a grand jury has the power to refuse to indict someone even when the prosecutor has established probable cause that this individual has committed a crime."  See id. at 1214 (Hawkins, J. dissenting).  Accord Navarro-Vargas I, 367 F.3d at 899 (Kozinski, J., dissenting); Marcucci, 299 F.3d at 1166-73 (Hawkins, J., dissenting).  In short, the grand jurors' prerogative not to indict enjoys strong support in the Ninth Circuit.  But not in Judge Burns' instructions.

## C.    The Instructions Forbid the Exercise of Grand Jury Discretion Established in Both *Vasquez* and *Navarro-Vargas II*.

The Navarro-Vargas II majority found that the instruction in that case "leave[s] room for the grand jury to dismiss even if it finds probable cause," 408 F.3d at 1205, adopting the analysis in its previous decision in Marcucci.  Marcucci reasoned that the instructions do not mandate that grand jurors indict upon every finding of probable cause because the term "should" may mean "what is probable or expected."  299 F.3d at 1164 (citation omitted).  That reading of the term "should" makes no sense in context, as Judge Hawkins ably pointed out.  See Navarro-Vargas II, 408 F.3d at 1210-11 (Hawkins, J., dissenting) ("The instruction's use of the word 'should' is most likely to be understood as imposing an inflexible 'duty or obligation' on grand jurors, and thus to circumscribe the grand jury's constitutional independence.").  See also id. ("The 'word' should is used to express a duty [or] obligation.") (quoting *The Oxford American Diction and Language Guide* 1579 (1999) (brackets in original)).

6

The debate about what the word "should" means is irrelevant here; the instructions here make no such fine distinction. The grand jury instructions make it painfully clear that grand jurors simply may not choose not to indict in the event of what appears to them to be an unfair application of the law: should "you disagree with that judgment made by Congress, then your option is not to say 'well, I'm going to vote against indicting even though I think that the evidence is sufficient'...." See Ex. A at 8-9. Thus, the instruction flatly bars the grand jury from declining to indict because they disagree with a proposed prosecution. No grand juror would read this language as instructing, or even allowing, him or her to assess "the need to indict." Vasquez, 474 U.S. at 264.

Nor does the Navarro-Vargas II majority's faith in the structure of the grand jury a cure for the instructions excesses. The Navarro-Vargas II majority attributes "[t]he grand jury's discretion -- its independence -- [to] the absolute secrecy of its deliberations and vote and the unreviewability of its decisions." 408 F.3d at 1200. As a result, the majority discounts the effect that a judge's instructions may have on a grand jury because "it is the *structure* of the grand jury process and its *function* that make it independent." Id. at 1202 (emphases in the original).

Judge Hawkins sharply criticized this approach. The majority, he explains, "believes that the 'structure' and 'function' of the grand jury -- particularly the secrecy of the proceedings and unreviewability of many of its decisions -- sufficiently protects that power." See id. at 1214 (Hawkins, J., dissenting). The flaw in the majority's analysis is that "[i]nstructing a grand jury that it lacks power to do anything beyond making a probable cause determination ... unconstitutionally undermines the very structural protections that the majority believes save[] the instruction." Id. After all, it is an "'almost invariable assumption of the law that jurors follow their instructions.'" Id. (quoting Richardson v. Marsh, 481 U.S. 200, 206 (1987)). If that "invariable assumption" were to hold true, then the grand jurors could not possibly fulfill the role described in Vasquez. Indeed, "there is something supremely cynical about saying that it is fine to give jurors erroneous instructions because nothing will happen if they disobey them." Id.

In setting forth Judge Hawkins' views, Ms. Heredia-Vargas understands that this Court may not adopt them solely because the reasoning that supports them is so much more persuasive than the

majority's sophistry.  Rather, he sets them forth to urge the Court *not to extend* what is already untenable reasoning.

Here, again, the question is not an obscure interpretation of the word "should", but an absolute ban on the right to refuse to indict that directly conflicts with the recognition of that right in Vasquez, Campbell, and both Navarro-Vargas II opinions.  Navarro-Vargas II is distinguishable on that basis, but not only that.

Judge Burns did not limit himself to denying the grand jurors the power that Vasquez plainly states they enjoy.  He also apparently excused prospective grand jurors who might have exercised that Fifth Amendment prerogative, excusing "three [jurors] in this case, because they could not adhere to [that] principle...."  See Ex. A at 8.  The structure of the grand jury and the secrecy of its deliberations cannot embolden grand jurors who are no longer there, likely because they expressed their willingness to act as the conscience of the community.  See Navarro-Vargas II, 408 F.3d at 1210-11 (Hawkins, J., dissenting) (a grand jury exercising its powers under Vasquez "serves ... to protect the accused from the other branches of government by acting as the 'conscience of the community.'") (quoting Gaither v. United States, 413 F.2d 1061, 1066 & n.6 (D.C. Cir. 1969)).  The federal courts possess only "very limited" power "to fashion, on their own initiative, rules of grand jury procedure," United States v. Williams, 504 U.S. 36, 50 (1992), and, here, Judge Burns has both fashioned his own rules and enforced them. The instructions here are therefore structural error.  See Navarro-Vargas II, 408 at 1216-17 (Hawkins, J., dissenting).  The indictment must be dismissed.

**D.    The Instructions Conflict With *Williams'* Holding that there Is No Duty to Present Exculpatory Evidence to the Grand Jury.**

In Williams, the defendant, although conceding that it was not required by the Fifth Amendment, argued that the federal courts should exercise their supervisory power to order prosecutors to disclose exculpatory evidence to grand jurors, or, perhaps, to find such disclosure required by Fifth Amendment common law.  See 504 U.S. at 45, 51.  Williams held that "as a general matter at least, no such 'supervisory' judicial authority exists."  See id. at 47.  Indeed, although the supervisory power may provide the authority "to dismiss an indictment because of misconduct before the grand jury, at least where that misconduct amounts to a violation of one of

those 'few, clear rules which were carefully drafted and approved by this Court and by Congress to ensure the integrity of the grand jury's functions,'" id. at 46 (citation omitted), it does not serve as "a means of *prescribing* such standards of prosecutorial conduct in the first instance." Id. at 47 (emphasis added). The federal courts possess only "very limited" power "to fashion, on their own initiative, rules of grand jury procedure." Id. at 50. As a consequence, Williams rejected the defendant's claim, both as an exercise of supervisory power and as Fifth Amendment common law. See id. at 51-55.

Despite the holding in Williams, the instructions here assure the grand jurors that prosecutors would present to them evidence that tended to undercut probable cause. See Ex. A at 20.

> Now, again, this emphasizes the difference between the function of the grand jury and the trial jury. You're all about probable cause. If you think that there's evidence out there that might cause you say "well, I don't think probable cause exists," then it's incumbent upon you to hear that evidence as well. As I told you, in most instances, *the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence.*

Id. (emphasis added). Moreover, the district court later returned to the notion of the prosecutors and their duties, advising the grand jurors that they "can expect that the U.S. Attorneys that will appear in from of [them] will be candid, they'll be honest, and ... they'll act in good faith in all matters presented to you." See id. at 27.

This particular instruction has a devastating effect on the grand jury's protective powers, particularly if it is not true. It begins by emphasizing the message that Navarro-Vargas II somehow concluded was not conveyed by the previous instruction: "You're all about probable cause." See Ex. A at 20. Thus, once again, the grand jury is reminded that they are limited to probable cause determinations (a reminder that was probably unnecessary in light of the fact that Judge Burns had already told the grand jurors that they likely would be excused if they rejected this limitation). The instruction goes on to tell the grand jurors that they should consider evidence that undercuts probable cause, but also advises the grand jurors that the prosecutor will present it. The end result, then, is that grand jurors should consider evidence that goes against probable cause, but, if none is presented by the government, they can presume that there is none. After all, "in most instances, the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you

to do if they're aware of that evidence." See id. Thus, if the exculpatory evidence existed, it necessarily would have been presented by the "duty-bound" prosecutor, because the grand jurors "can expect that the U.S. Attorneys that will appear in from of [them] will be candid, they'll be honest, and ... they'll act in good faith in all matters presented to you." See id. at 27.

These instructions create a presumption that, in cases where the prosecutor does not present exculpatory evidence, no exculpatory evidence exists. A grand juror's reasoning, in a case in which no exculpatory evidence was presented, would proceed along these lines:

(1) I have to consider evidence that undercuts probable cause.
(2) The candid, honest, duty-bound prosecutor would, in good faith, have presented any such evidence to me, if it existed.
(3) Because no such evidence was presented to me, I may conclude that there is none.

Even if some exculpatory evidence were presented, a grand juror would necessarily presume that the evidence presented represents the universe of all available exculpatory evidence; if there was more, the duty-bound prosecutor would have presented it.

The instructions therefore discourage investigation -- if exculpatory evidence were out there, the prosecutor would present it, so investigation is a waste of time -- and provide additional support to every probable cause determination: i.e., this case may be weak, but I know that there is nothing on the other side of the equation because it was not presented. A grand jury so badly misguided is no grand jury at all under the Fifth Amendment

## II.

## ANY STATEMENTS MADE BY MS. HEREDIA-VARGAS SHOULD BE SUPPRESSED.

A. The Government Must Demonstrate Compliance With *Miranda*.

1. *Miranda* Warnings Must Precede Custodial Interrogation.

The prosecution may not use statements, whether exculpatory or inculpatory, stemming from a custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. Miranda v. Arizona, 384 U.S. 436, 444 (1966); see also Berkemer v. McCarty, 468 U.S. 420, 428 (1984) (restating Miranda

1   principles).  Custodial interrogation is questioning initiated by law enforcement officers after a

2   person has been taken into custody or otherwise deprived of his freedom of action in any significant

3   way.  Id.  See Orozco v. Texas, 394 U.S. 324, 327 (1969).

4        When the agents detained Ms. Heredia-Vargas, no reasonable person could have felt

5   free to leave.   Once a person is in custody, Miranda warnings must be given prior to any

6   interrogation.  See United States v. Estrada-Lucas, 651 F.2d 1261, 1265 (9th Cir. 1980) (to trigger

7   the Miranda requirement not only must probable cause exist but also a person must reasonably

8   believe that he is not free to leave).  Those warnings must advise the defendant of each of his or her

9   "critical" rights.  United States v. Bland, 908 F.2d 471, 474 (9th Cir. 1990).  If a defendant indicates

10  that he wishes to remain silent or requests counsel, the interrogation must cease.  Miranda, 384 U.S.

11  at 474.  See also Edwards v. Arizona, 451 U.S. 477, 484 (1981).  Here, there were no such Miranda

12  rights given at the field.

13  B.        Ms. Heredia-Vargas's Statements Were Involuntary.

14       Even when the procedural safeguards of Miranda have been satisfied, a defendant in

15  a criminal case is deprived of due process of law if his conviction is founded upon an involuntary

16  confession.  Arizona v. Fulminante, 499 U.S. 279 (1991); Jackson v. Denno, 378 U.S. 368, 387

17  (1964).   The government bears the burden of proving that a confession is voluntary by a

18  preponderance of the evidence.  Lego v. Twomey, 404 U.S. 477, 483 (1972).

19       In order to be voluntary, a statement must be the product of a rational intellect and free

20  will.  Blackburn v. Alabama, 361 U.S. 199, 208 (1960).  In determining whether a defendant's will

21  was overborne in a particular case, the totality of the circumstances must be considered.

22  Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973).

23       A confession is deemed involuntary if coerced by physical intimidation or psychological

24  pressure.  Townsend v. Sain, 372 U.S. 293, 307 (1963).  "The test is whether the confession was

25  'extracted by any sort of threats or violence, [or] obtained by any direct or implied promises,

26  however slight, [or] by the exertion of any improper influence.'"  Hutto v. Ross, 429 U.S. 28, 30

27  (1976) (quoting Bram v. United States, 168 U.S. 532, 542-43 (1897)).  Accord United States v.

28  Tingle, 658 F.2d 1332, 1335 (9th Cir. 1981).   The government bears a heavy burden in

demonstrating that a confession is voluntary and the finding of voluntariness "'must appear from the record with unmistakable clarity.'" <u>Davidson</u>, 768 F.2d at 1270. Here, such a finding cannot be made.

C.       This Court Should Conduct An Evidentiary Hearing.

This Court should conduct an evidentiary hearing to determine whether Ms. Heredia-Vargas's statements should be admitted into evidence, if any such statements exist. Under 18 U.S.C. § 3501(a), this Court is required to determine, outside the presence of the jury, whether any statements made by Ms. Heredia-Vargas are voluntary. In addition, § 3501(b) requires this Court to consider various enumerated factors, including whether Ms. Heredia-Vargas understood the nature of the charges against her and whether she understood her rights. Without evidence, this Court cannot adequately consider these statutorily mandated factors.

Moreover, section 3501(a) requires this Court to make a factual determination. Where a factual determination is required, courts are obligated to make factual findings by Fed. R. Crim. P. 12.  <u>See</u> <u>United States v. Prieto-Villa</u>, 910 F.2d 601, 606-10 (9th Cir. 1990).  Because "'suppression hearings are often as important as the trial itself,'" <u>id.</u> at 610 (quoting <u>Waller v. Georgia</u>, 467 U.S. 39, 46 (1984)), these findings should be supported by evidence, not merely an unsubstantiated recitation of purported evidence in a prosecutor's responsive pleading.

**III.**

**THIS COURT MUST SUPPRESS ALL FRUITS OF THE ILLEGAL SEARCH OF THE RV BECAUSE IT WAS NOT SUPPORTED BY PROBABLE CAUSE.**

Warrantless searches are "'per se unreasonable under the Fourth Amendment -- subject only to a few specifically established and well-delineated exceptions.'" <u>Mincey v. Arizona</u>, 437 U.S. 385, 390 (1978), (quoting <u>Katz v. United States</u>, 389 U.S. 347, 357 (1967) (footnote omitted)). Law enforcement officers may conduct a warrantless search of a vehicle in limited circumstances. A warrantless search is permitted if there is probable cause to believe that the vehicle contains evidence of a crime.  <u>Carroll v. United States</u>, 267 U.S. 132 (1925).

The showing of probable cause must be equivalent to that which would be required for a search warrant to issue.  United States v. Dunn, 946 F.2d 615, 618-19 (9th Cir. 1991) (citing California v. Carney, 105 S. Ct. 2066, 2069 (1985)), cert. denied, 502 U.S. 950 (1991).  Probable cause arises when officers have knowledge of trustworthy facts sufficient in themselves to warrant a person of reasonable caution to believe that an offense has been committed.  United States v. Patterson, 492 F.2d 995, 997 (9th Cir. 1974).  Notably, it is the government's burden to demonstrate that the automobile exception to the warrant requirement is applicable.  United States v. Linn, 880 F.2d 209, 214 (9th Cir. 1989).

Here, agents began surveilling the campground at 10:45 a.m. but saw nothing during daylight hours which would constitute probable cause.  All of the allegedly suspicious activity took place well after dark--in remote campgrounds where there was no source of light other than that provided by the agents or the defendants.  Under these circumstances, it is highly unlikely that the agents were able to see sufficiently well to uncover any illegal activity.  The Government has not proved that sufficient probable cause justified the search.  In the absence of such a showing, all evidence resulting from the search (including the marijuana and the subsequent statements) must be suppressed.

## IV.

### THE COULD SHOULD SUPPRESS ALL FRUITS OF MS. HEREDIA-VARGAS' ILLEGAL ARREST, WHICH WAS NOT SUPPORTED BY PARTICULARIZED PROBABLE CAUSE.

Agents of the FBI, DEA and BLM arrested Ms. Heredia-Vargas, removed her from the RV in which she was merely present and placed her under arrest.  Before her arrest, none of the agents had seen Ms. Heredia-Vargas participate in any of the trips to the south, or any of the purported movements of bales of marijuana from area to area.  Indeed, before her arrest, agents had only witnessed all the other co-defendant engage in activity that they characterized as suspicious.

Where the agents arrest a defendant without a lawful arrest warrant, the Government must prove that the arrest was be supported by probable cause.  Ybarra v. Illinios, 444 U.S. 85, 91 (1979).  Here, the government agents neither had probable cause to arrest Ms. Heredia-

Vargas. At the time of her detention there was no evidence to suggest that she was anything other than merely present at the scene of the possible crime.

It is well-established that before an arrest, there must be particularized probable cause for each individual, and "mere presence on the premises, without more, cannot support an arrest . . . ." United States v. Robertson, 833 F.2d 777, 782 (9th Cir. 1987). In Robertson, defendant Steeprow was seen exiting a home where agents possessed probable cause to believe that methamphetamine was being manufactured. Robertson, 833 F.2d at 778-79. Relying on Ybarra v Illinois, 444 U.S. 85, 91 (1979), the Ninth Circuit held that Steeprow's "mere presence on the premises, without more, cannot support an arrest of her under these circumstances," id. at 782-83 (citations omitted), even though the home contained "equipment characteristic of a crank lab and [agents could] sniff[] such a laboratory's characteristic odor." Id. at 779. Notably, the Court  focused on what the officers knew at the time of Steeprow's arrest to hold that the officer's information at the time did not provide them with particularized probable cause. Id. at 782.

The Supreme Court, too, recognizes that need for particularized suspicion during an arrest. In Ybarra, the Supreme Court held that was no probable cause to seize and search customers found in a tavern for which officers possessed a lawful search warrant. Where the standard is probable cause, before officers may conduct a search or seizure they must have "probable cause particularized with respect to that person. This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another . . . ." Ybarra, 444 U.S. at 91 (emphasis added). Thus, the fact that probable cause exists to search or arrest other people present on the premises does not permit the arrest of others for whom the officers do not have particularized suspicion.

In United States v. Soyland, 3 F.3d 1312 (9th Cir. 1993), the Ninth Circuit reversed a conviction based on lack of probable cause to arrest a passenger. Soyland, 3 F.3d at 1312. There, the defendant was a passenger in a car that was stopped at an immigration checkpoint. An immigration inspector noted the smell of methamphetamine, and a subsequent search revealed three marijuana cigarettes, a pipe with marijuana residue, and six hundred dollars. A

subsequent search of Soyland, the passenger, was without probable cause because there "was not a sufficient link between Soyland and the odor of methamphetamine or the marijuana cigarettes, and his 'mere presence' did not give rise to probable cause to arrest and search him." Soyland, 3 F.3d at 1314. Thus, even though there was objective evidence of ongoing criminality -- in the form of the odor of methamphetamine -- of which Soyland had to be aware, there was still no probable cause as to him. Id.

Here, when Ms. Heredia-Vargas was arrested, the agents had not seen her engage in any criminal activity. Indeed, the discovery suggests that before her arrest they had not seen her at all. They had not yet discovered the marijuana and while arguably they had suspicion to arrest the other defendants, they did not have the same particularized suspicion for her. Ms. Heredia-Vargas' arrest, thus, was unsupported by probable cause.

**V.**

**MOTION TO COMPEL DISCOVERY AND PRESERVE EVIDENCE**

Ms. Heredia-Vargas moves for the production by the government of the following discovery and for the preservation of evidence. This request is not limited to those items that the prosecutor knows of, but rather includes all discovery listed below that is in the custody, control, care, or knowledge of any government agency. See generally Kyles v. Whitley, 514 U.S. 419 (1995); United States v. Bryan, 868 F.2d 1032 (9th Cir. 1989).

(1) The Defendant's Statements. The Government must disclose to the defendant all copies of any written or recorded statements made by the defendant; the substance of any statements made by the defendant which the Government intends to offer in evidence at trial; any response by the defendant to interrogation; the substance of any oral statements which the Government intends to introduce at trial and any written summaries of the defendant's oral statements contained in the handwritten notes of the Government agent; any response to any Miranda warnings which may have been given to the defendant; as well as any other statements by the defendant. Fed. R. Crim. P. 16(a)(1)(A). The Advisory Committee Notes and the 1991 amendments to Rule 16 make clear that the Government must reveal all the defendant's

statements, whetheroral or written, regardless of whether the government intends to make any use of those statements.

(2) <u>Arrest Reports, Notes and Dispatch Tapes</u>.  The defense also specifically requests that all arrest reports, notes and dispatch or any other tapes that relate to the circumstances surrounding her arrest or any questioning, if such reports have not already been produced <u>in their entirety</u>, be turned over to her.  This request includes, but is not limited to, any rough notes, records, reports, transcripts or other documents in which statements of the defendant or any other discoverable material is contained.  This is all discoverable under Fed. R. Crim. P. 16(a)(1)(A) and <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).  <u>See also</u> <u>Loux v. United States</u>, 389 F.2d 911 (9th Cir. 1968).  Arrest reports, investigator's notes, memos from arresting officers, dispatch tapes, sworn statements, and prosecution reports pertaining to the defendant are available under Fed. R. Crim. P. 16(a)(1)(B) and (C), Fed. R. Crim. P. 26.2 and 12(i).  Preservation of rough notes is requested, whether or not the government deems them discoverable.

(3) <u>Brady Material</u>.  Ms. Heredia-Vargas requests all documents, statements, agents' reports, and tangible evidence favorable to the defendant on the issue of guilt and/or which affects the credibility of the government's case.  Impeachment as well as exculpatory evidence falls within <u>Brady's</u> definition of evidence favorable to the accused. <u>United States v. Bagley</u>, 473 U.S. 667 (1985); <u>United States v. Agurs</u>, 427 U.S. 97 (1976).

(4) <u>Any Information That May result in a Lower Sentence Under The Guidelines</u>.  As discussed above, this information is discoverable under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).  This request includes any cooperation or attempted cooperation by the defendant, as well as any information that could affect any base offense level or specific offense characteristic under Chapter Two of the Guidelines.  Also included in this request is any information relevant to a Chapter Three adjustment, a determination of the defendant's criminal history, or any other application of the Guidelines.

(5) <u>The Defendant's Prior Record</u>.  Evidence of prior record is available under Fed. R. Crim. P. 16(a)(1)(B).  Counsel specifically requests a complete copy of any criminal record.

(6) Any Proposed 404(b) Evidence. Evidence of prior similar acts is discoverable under Fed. R. Crim. P. 16(a)(1)(C) and Fed. R. Evid. 404(b) and 609. In addition, under Fed. R. Evid. 404(b), "upon request of the accused, the prosecution . . . shall provide reasonable notice in advance of trial . . . of the general nature . . ." of any evidence the government proposes to introduce under Fed. R. Evid. 404(b) at trial. The defendant requests that such notice be given three weeks before trial in order to give the defense time to adequately investigate and prepare for trial.

(7) Evidence Seized. Evidence seized as a result of any search, either warrantless or with a warrant, is discoverable under Fed. R. Crim. P. 16(a)(1)(C).

(8) Request for Preservation of Evidence. The defense specifically requests that all dispatch tapes or any other physical evidence that may be destroyed, lost, or otherwise put out of the possession, custody, or care of the government and which relate to the arrest or the events leading to the arrest in this case be preserved. This request includes, but is not limited to, all persons who were apprehended as passengers in the van at issue in the instant case, the results of any fingerprint analysis, the defendant's personal effects, the vehicle, and any other evidence seized from the defendant or any third party. It is requested that the government be ordered to question all the agencies and individuals involved in the prosecution and investigation of this case to determine if such evidence exists, and if it does exist to inform those parties to preserve any such evidence.

(9) Tangible Objects. The defense requests, under Fed. R. Crim. P. 16(a)(1)(C) the opportunity to inspect and copy as well as test, if necessary, all other documents and tangible objects, including photographs, books, papers, documents, photographs of buildings or places or copies of portions thereof which are material to the defense or intended for use in the government's case-in-chief or were obtained from or belong to the defendant. Specifically, Ms. Heredia-Vargas requests a copy of the videotape interview of the material witness, if one exists.

(10) Evidence of Bias or Motive to Lie. The defense requests any evidence that any prospective government witness is biased or prejudiced against the defendant, or has a motive to

falsify or distort his or her testimony.  Pennsylvania v. Ritchie, 480 U.S. 39 (1987);

United States v. Strifler, 851 F.2d 1197 (9th Cir. 1988).

(11) Impeachment evidence.  Ms. Heredia-Vargas requests any evidence that any prospective government witness has engaged in any criminal act whether or not resulting in a conviction and whether any witness has made a statement favorable to the defendant.  See Fed. R. Evid. 608, 609 and 613.  Such evidence is discoverable under Brady v. Maryland, supra.  See United States v. Strifler, 851 F.2d 1197 (9th Cir. 1988) (witness' prior record); Thomas v. United States, 343 F.2d 49 (9th Cir. 1965) (evidence that detracts from a witness' credibility).

(12) Evidence of Criminal Investigation of Any Government Witness. The defense requests any evidence that any prospective witness is under investigation by federal, state or local authorities for any criminal conduct.  United States v. Chitty, 760 F.2d 425 (2d Cir. 1985).

(13)  Evidence Affecting Perception, Recollection, Ability to Communicate.  Ms. Heredia-Vargas requests any evidence, including any medical or psychiatric report or evaluation, tending to show that any prospective witness's ability to perceive, remember, communicate, or tell the truth is impaired; and any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic.  United States v. Strifler, 851 F.2d 1197 (9th Cir. 1988); Chavis v. North Carolina, 637 F.2d 213, 224 (4th Cir. 1980).

(14) Witness Addresses.  The defense requests the name and last known address of each prospective government witness.  See United States v. Napue, 834 F.2d 1311 (7th Cir. 1987); United States v. Tucker, 716 F.2d 576 (9th Cir. 1983) (failure to interview government witnesses by counsel is ineffective); United States v. Cook, 608 F.2d 1175, 1181 (9th Cir. 1979)) (defense has equal right to talk to witnesses).  The defendant also requests the name and last known address of every witness to the crime or crimes charged (or any of the overt acts committed in furtherance thereof) who will not be called as a government witness.  United States v. Cadet, 727 F.2d 1453 (9th Cir. 1984).

(15) Name of Witnesses Favorable to the Defendant.  Ms. Heredia-Vargas requests the name of any witness who made any arguably favorable statement concerning the defendant or who could not identify her or who was unsure of her identity, or participation in the crime

charged. <u>Jackson v. Wainwright</u>, 390 F.2d 288 (5th Cir. 1968); <u>Chavis v. North Carolina</u>, 637 F.2d 213, 223 (4th Cir. 1980); <u>Jones v. Jago</u>, 575 F.2d 1164, 1168 (6th Cir.), <u>cert. denied</u>, 439 U.S. 883 (1978); <u>Hudson v. Blackburn</u>, 601 F.2d 785 (5th Cir. 1979), <u>cert. denied</u>, 444 U.S. 1086 (1980).

(16) <u>Statements Relevant to the Defense</u>. Ms. Heredia-Vargas requests disclosure of any statement that may be "relevant to any possible defense or contention" that she might assert. <u>United States v. Bailleaux</u>, 685 F.2d 1105 (9th Cir. 1982). This would include Grand Jury transcripts which are relevant to the defense motion to dismiss the indictment.

(17) <u>Jencks Act Material</u>. The defense requests all material to which Ms. Heredia-Vargas is entitled pursuant to the Jencks Act, 18 U.S.C. § 3500, reasonably in advance of trial, including dispatch tapes. A verbal acknowledgment that "rough" notes constitute an accurate account of the witness' interview is sufficient for the report or notes to qualify as a statement under § 3500(e)(1). <u>Campbell v. United States</u>, 373 U.S. 487, 490-92 (1963).

(18) <u>Giglio Information</u>. Pursuant to <u>Giglio v. United States</u>, 405 U.S. 150 (1972), the defendant requests all statements and/or promises, expressed or implied, made to any government witnesses, in exchange for their testimony in this case, and all other information which could arguably be used for the impeachment of any government witnesses.

(19) <u>Reports of Scientific Tests or Examinations</u>. Pursuant to Fed. R. Crim. P. 16(a)(1)(D), the defendant requests the reports of all tests and examinations conducted upon the evidence in this case. Including, but not limited to, any fingerprint testing done upon any evidence seized in this case, that is within the possession, custody, or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government, and which are material to the preparation of the defense or are intended for use by the government as evidence in chief at the trial.

(20) <u>Henthorn Material</u>. The defense requests that the prosecutor review the personnel files of the officers involved in her arrests, and those who will testify, and produce to her any exculpatory information at least two weeks prior to trial and one week prior to the motion hearing. <u>See United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991). In addition, she

requests that if the government is uncertain whether certain information is to be turned over pursuant to this request, that it produce such information to the Court in advance of the trial and the motion hearing for an in camera inspection.

(21) <u>Informants and Cooperating Witnesses</u>.  Ms. Heredia-Vargas requests disclosure of the names and addresses of all informants or cooperating witnesses used or to be used in this case.  The government must disclose the informant's identity and location, as well as disclose the existence of any other percipient witness unknown or unknowable to the defense. <u>Roviaro v. United States</u>, 353 U.S. 53, 61-62 (1957).  Ms. Heredia-Vargas also requests disclosure of any information indicating bias on the part of any informant or cooperating witness.  <u>Giglio v. United States</u>, 405 U.S. 150 (1972).  Such information would include inducements, favors, payments, or threats made to the witness to secure cooperation with the authorities.

(22) <u>Expert Witnesses</u>.  The defendant requests disclosure of any expert witnesses the government intends to call at trial and "a written summary of testimony that the government intends to use," including the "witnesses' opinions, the bases and the reasons for those opinions" and his or her qualifications.  Fed. R. Crim. P. 16(a)(1)(E).

(23) <u>Residual Request</u>.  The defense intends by this discovery motion to invoke her rights to discovery to the fullest extent possible under the Federal Rules of Criminal Procedure and the Constitution and laws of the United States.  This request specifically includes all subsections of Rule 16.  Ms. Heredia-Vargas requests that the government provide her and her attorney with the above requested material sufficiently in advance of trial.

**VI.**

**REQUEST FOR LEAVE TO FILE FURTHER MOTIONS**

To date, Ms. Heredia-Vargas and defense counsel have received limited discovery from the government.  It is anticipated that as new information comes to light, the defense will likely find it necessary to file further motions.  For example, Ms. Heredia-Vargas only has two reports generated by agents, even though a number of agents were involved in the surveillance. Significantly, the government has not provided the "line-sheets" of the surveillance that were

referenced by the discovery. Therefore, Ms. Heredia-Vargas requested that defense counsel be allowed the opportunity to file further motions based upon information gained through the discovery process.

## VI.

## <u>CONCLUSION</u>

For the reasons stated above, Ms. Heredia-Vargas moves this Court to grant her motions.

Respectfully submitted,

_____/s/ Norma A. Aguilar_____
Dated:       February 22, 2008              **NORMA A. AGUILAR**
Attorney for Ms. Heredia-Vargas
norma_aguilar@fd.org