1  HOLLY S. HANOVER, Esq.
   California State Bar Number 177303
2  1016 La Mesa Ave
   Spring Valley, CA 91977
3  Telephone: (619) 295-1264
   E-Mail: Netlawyr@aol.com
4  Attorney for Defendant, Mr. Martin Morales Lozano Vargas

5              **UNITED STATES DISTRICT COURT**
               **SOUTHERN DISTRICT OF CALIFORNIA**
6                **(THE HON. DANA M. SABRAW)**

7  **UNITED STATES OF AMERICA,**        )   CASE NO. 07cr3415-DMS
           Plaintiff,                    )
8                                        )   DATE: May 9, 2008
   v.                                    )   TIME: 1:30 p.m.
9                                        )
   **MARTIN MORALES LOZANO VARGAS**     )   **STATEMENT OF FACTS AND**
10 **(3),**                              )   **MEMORANDUM OF POINTS AND**
           Defendant.                    )   **AUTHORITIES IN SUPPORT**
11 _____        )   **OF DEFENDANT'S MOTION**

12 TO:   KAREN P. HEWITT, or current UNITED STATES ATTORNEY, AND
         PETER MAZZA, or current ASSISTANT UNITED STATES ATTORNEY:
13

14                                 **I.**

15                        **STATEMENT OF FACTS**

16     The following statement of facts is based, in part, on the
17 indictment, the complaint and initial statement of facts and other
18 information provided by the United States Attorney's office. To date,
19 Counsel has received approximately 130 pages of Discovery thus far (most
20 of which are b/w pictures). The facts set forth in these motions are
21 subject to amplification and/or modification at the time these motions
22 are heard and are not adopted by the defense.

23     On or about December 8, 2007, undercover agents from the U.S.
24 Department of Interior, Bureau of Land Management (BLM), the Drug
25 Enforcement Agency (DEA), and the Federal Bureau of Investigation (FBI)
26 were conducting surveillance of the Midway campground area approximately
27 .9 miles north of the international Border with Mexico in Imperial
28 County. It is believed much of the surveillance was done with night

scopes. During this surveillance, some occupants of the campsite were acting suspiciously according to agents by riding their ATV's in the dark, without headlights.

At approximately 8:20 p.m., agents observed who they later claim to identify as Jesus Trapero-Zazueta put out a campfire and a person they claim to identify as Martin Morales Lozano-Vargas departed the area on an ATV with the lights out. Again, at this hour, it would have been dark outside, and it is believed agents were using night scopes to view most of the activity in this location. At approximately 8:30 p.m., the person they claim to be Mr. Lozano Vargas, returned to the camp still driving without headlights. Agents then observed with night vision goggles, several ATVs traveling without headlights and with large bundles attached to the back of those ATVs.

Agents believed this activity to be consistent with drug smuggling activity, so they continued to observe the campsite where the ATVs riders off-loaded the bundles onto a flat bed trailer, at the direction of who they claim was Mr. Lozano-Vargas. After the trailer was loaded, the ATVs departed with their lights on. Agents then say they observed Mr. Trapero Zazuete, Mr. Lozano Vargas, and a man they later identified as Christian Maria Rodriguez remove the bundles from the trailer and walk around a corner, out of sight towards a 2007 "Cruise America" rental motorhome (CA Lic. 5UVF195), which was attached to the trailer. Agents also say they saw a man later identified as Adan Magana, Jr., sitting in a chair within the campsite, whom appeared to be acting as a lookout.

At approximately 11:50 p.m., agents from the BLM, DEA, FBI and ICE with assistance from the CHP, and Imperial County Sheriff's Department, knocked on the door of the motorhome and made contact with Mr.

1  Rodriguez. Agents took all the men from inside the motor home, and also
2  found another woman, Margarita Heredia Vargas, emerge from the motor
3  home. When agents entered the motor home, they smelled what they
4  believed to be marijuana. Several bundles (approximately 47) were found
5  in the bedroom area in the rear. The total weight of those bundles was
6  approximately 382.08 kilograms.

7      At approximately 12:50, a.m., Mr. Lozano Vargas was interrogated
8  by Special Agent Jeff Butler, but the circumstances surrounding that
9  interrogation are not clear even in the reports provided thus far. He
10 made statements during this time, and the defense disputes any claim by
11 the government that these statements were given voluntarily.
12 Mr. Lozano was released on bail, but then picked up by California State
13 authorities, because he was unable to attend a diversion class during
14 the time he was in Federal Custody. Rather than fight that charge, he
15 simply agreed to do 90 days in State Custody.

16     Counsel had been trying to push for Federal Authorities to writ him
17 into Federal Custody to allow this case to proceed, but because his
18 incarceration was in Banning, California, it apparently took longer than
19 expected to bring Mr. Lozano back into Federal Custody. Counsel called
20 U.S. Marshals several times, and even on March 21, 2008 (which was the
21 deadline set by the Court for Mr. Lozano to file his declaration), but
22 Mr. Lozano Vargas was not in Federal Custody. He was, "In transit".

23     Finally, on March 27 or 28, defense counsel was called by pre-trial
24 services and told that Mr. Lozano was now in Federal Custody. Counsel
25 is currently making arrangements to see Mr. Lozano to prepare a
26 declaration, and will re-visit him again for a signature once the
27 declaration is complete. Counsel will be working on that this week.
28

**II.**

**ANY STATEMENTS MADE BY MR. LOZANO SHOULD BE SUPPRESSED**

**A.   The Government Must Demonstrate Compliance With *Miranda*.**

In their reports, Agent Jeff Butler (as witnessed by agent Travis Lemon), claim that Mr. Lozano was read his Miranda rights and that Mr. Lozano indicated he understood those rights and agreed to be questioned. Counsel could find no written waiver, and it is unclear whether any questioning took place before any Miranda rights were administered. At the time of his questioning, Mr. Lozano believed that agents were going to charge his grandmother criminally unless he spoke with them. As a result, Mr. Lozano allegedly made incriminating statements.

**1.   *Miranda* Warnings Must Precede Custodial Interrogation.**

The Supreme Court has held that the prosecution may not use statements, whether exculpatory or inculpatory, stemming from a custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. See Miranda v. Arizona, 384 U.S. 436, 444 (1966). The law imposes no substantive duty upon the defendant to make any showing other than that the statement was taken from the defendant during custodial interrogation. Id. at 476.

Custodial interrogation is questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. Id. at 477; see Orozco v. Texas, 394 U.S. 324, 327 (1969). In Stansbury v. California, the Supreme Court clarified its prior decisions by stating that "the initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned."

511 U.S. 318, 323 (1994).

The Ninth Circuit has held that a suspect will be found to be in custody if the actions of the interrogating officers and the surrounding circumstances, fairly construed, would reasonably have led him to believe he could not freely leave. See United States v. Lee, 699 F.2d 466, 468 (9th Cir. 1982); United States v. Bekowies, 432 F.2d 8, 12 (9th Cir. 1970). In determining whether a person is in custody, a reviewing court must consider the language used to summon the defendant, the physical surroundings of the interrogation, and the extent to which the defendant is confronted with evidence of his guilt. See United States v. Estrada-Lucas, 651 F.2d 1261 (9th Cir. 1980).

Once a person is in custody, Miranda warnings must be given prior to any interrogation. In United States v. Leasure, the Ninth Circuit held that "custody," for the purposes of Miranda warnings, usually begin at the point of secondary inspection in border cases. 122 F.3d 837, 840 (1997). Miranda warnings must advise the defendant of each of his or her "critical" rights. See United States v. Bland, 908 F.2d 471, 473 (9th Cir. 1990). Furthermore, if a defendant indicates that he wishes to remain silent or requests counsel, the interrogation must cease. See Miranda, 384 U.S. at 473-74; see also Edwards v. Arizona, 451 U.S. 477, 482 (1981).

In this case, Mr. Lozano was in custody, as he had been arrested by several agents when the campsite was raided, and he was confined by them.

**2.    The Government Must Demonstrate That Mr. Lozano's Alleged Waiver Was Voluntary, Knowing, and Intelligent.**

For a defendant's inculpatory statements to be admitted into evidence, the defendant's "waiver of Miranda rights [during custodial

interrogation] must be voluntary, knowing and intelligent." <u>United States v. Binder</u>, 769 F.2d 595, 599 (9th Cir. 1985) (citing <u>Miranda</u> 384 U.S. at 479); <u>see also</u> <u>United States v. Vallejo</u>, 237 F.3d 1008, 1014 (9th Cir. 2001); <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218 (1973).

When interrogation continues in the absence of an attorney, and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant intelligently and voluntarily waived his privilege against self-incrimination and his right to retained or appointed counsel. See <u>Miranda</u>, 384 U.S. at 475. The Ninth Circuit has held, "[t]here is a presumption against waiver." <u>Garibay</u>, 143 F.3d 534, 536-37 (1998) (citing <u>United States v. Bernard S.</u>, 795 F.2d 749, 752 (9th Cir. 1986)) (other internal citations omitted); <u>see also</u> <u>United States v. Heldt</u>, 745 F.2d 1275, 1277 (9th Cir. 1984) (stating that the court must indulge every reasonable presumption against waiver of fundamental constitutional rights) (citing <u>Johnson v. Zerbst</u>, 304 U.S. 458, 464 (1938)).

The validity of the waiver depends upon the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused. <u>See</u> <u>Edwards</u>, 451 U.S. at 482; <u>Zerbst</u>, 304 U.S. at 464; <u>see also</u> <u>Garibay</u>, 143 F.3d at 536; <u>see also</u> <u>Bernard S.</u>, 795 F.2d at 751 (stating that "[a] valid waiver of Miranda rights depends upon the totality of the circumstances, including the background, experience and conduct of the accused"). A determination of the voluntary nature of a waiver "is equivalent to the voluntariness inquiry [under] the [Fifth] Amendment." <u>Derrick v. Peterson</u>, 924 F.2d 813, 820 (9th Cir. 1990).

A determination of whether a waiver is knowing and intelligent, on the other hand, requires a reviewing court to discern whether "the

1  waiver [was] made with a full awareness both of the nature of the right
2  being abandoned and the consequences of the decision to abandon it."
3  Id.; see also United States v. Amano, 229 F.3d 801, 805 (9th Cir. 2000);
4  Garibay, 143 F.3d at 536.  This inquiry requires that a court determine
5  whether "the requisite level of comprehension" existed before the
6  purported waiver may be upheld.  Derrick, 924 F.2d at 820.  Thus,
7  "[o]nly if the `totality of the circumstances surrounding the
8  interrogation' reveal both an uncoerced choice and the requisite level
9  of comprehension may a court properly conclude that the Miranda rights
10 have been waived."  Id. (quoting Burbine, 475 U.S. at 421) (emphasis in
11 original) (other internal citations omitted).

12     Unless and until Miranda warnings and a knowing and intelligent
13 waiver are demonstrated by the prosecution, no evidence obtained as
14 result of the interrogation can be used against the defendant.  See
15 Miranda, 384 U.S. at 479.

16 **B.    Mr. Lozano's Statements Were Involuntary.**

17     Even when the procedural safeguards of Miranda have been satisfied,
18 a defendant in a criminal case is deprived of due process of law if his
19 conviction is founded upon an involuntary confession.  See Arizona v.
20 Fulminante, 499 U.S. 279 (1991); Jackson v. Denno, 378 U.S. 368, 387
21 (1964).  The government bears the burden of proving that a confession
22 is voluntary by a preponderance of the evidence.  See Lego v. Twomey,
23 404 U.S. 477, 483-84 (1972).

24     A voluntary statement must be the product of a rational intellect
25 and free will.  See Blackburn v. Alabama, 361 U.S. 199, 208 (1960).  In
26 determining the voluntariness of a confession, the Ninth Circuit has
27 required consideration of "whether, under the totality of the
28 circumstances, the challenged confession was obtained in a manner

compatible with the requirements of the Constitution." <u>United States v. Bautista-Avila</u>, 6 F.3d 1360, 1364 (9th Cir. 1993) (citations omitted); <u>see also</u> <u>Bustamonte</u>, 412 U.S. at 226.

Factors a reviewing court should consider when determining voluntariness include the youth of the accused, lack of education, low intelligence, the absence of any advice regarding the accused's constitutional rights, the length of the detention, the repeated and prolonged nature of the questioning, and the use of physical punishment, such as the deprivation of food or sleep, to determine if law enforcement officers elicited a voluntary confession. <u>See</u> <u>Bustamonte</u>, 412 U.S. at 226.

In general, a statement is considered involuntary if it is "extracted by any sort of threats or violence, [or] obtained by any direct or implied promises, however slight, [or] by the exertion of any improper influence." <u>Hutto v. Ross</u>, 429 U.S. 28, 30 (1976) (per curiam) (quoting <u>Bram v. United States</u>, 168 U.S. 532, 542-43 (1897)); <u>see also</u> <u>United States v. Tingle</u>, 658 F.2d 1332, 1335 (9th Cir. 1981) (agent's express statement that defendant would not see her child "for a while" and warning that she had "a lot at stake", referring specifically to her child, were patently coercive and defendant's resultant confession held involuntary).

In this case, because of what agents told him, Mr. Lozano believed that if he wanted to keep his grandmother out of the legal mess they all seemed to be in, he had to speak to agents. He believed that if he remained silent, the agents would charge his grandmother criminally, and he feared for her safety. He believed that by talking, agents would not charge his grandmother, so he agreed to speak to them.

**C.    This Court Should Conduct An Evidentiary Hearing.**

1    This Court must conduct an evidentiary hearing to determine whether
2 Mr. Lozano's statements should be admitted into evidence. Under 18
3 U.S.C. § 3501(a), this Court is required to determine, outside the
4 presence of the jury, whether any statements made by Mr. Lozano are
5 voluntary. In addition, 18 U.S.C. § 3501(b) requires this Court to
6 consider various enumerated factors, including Mr. Lozano's
7 understanding of his rights and of the charges against him. Without the
8 presentation of evidence, this Court cannot adequately consider these
9 statutorily mandated factors.
10    Moreover, § 3501(a) requires this Court to make a factual
11 determination. If a factual determination is required, courts must make
12 factual findings by Fed. R. Crim. P. 12. See United States v. Prieto-
13 Villa, 910 F.2d 601, 606-10 (9th Cir. 1990). Since "`suppression
14 hearings are often as important as the trial itself,'" id. at 609-10
15 (quoting Waller v. Georgia, 467 U.S. 39, 46 (1984)), these findings
16 should be supported by evidence, not merely an unsubstantiated
17 recitation of purported evidence in a prosecutor's responsive pleading.

**III.**

**MR. LOZANO RESPECTFULLY REQUESTS FOR ADDITIONAL TIME TO FILE HIS DECLARATION**

21    As mentioned in the statement of facts, Mr. Lozano was originally
22 in Federal Custody, but posted bond, and was subsequently taken into
23 State Custody because he was unable to attend a diversion class while
24 he was in Federal Custody. He remained in Banning, CA jail, where
25 counsel was able to drive up and see him once, but after writ
26 proceedings were initiated, it took much longer than expected to bring
27 him back into Federal custody.
28    The Court initially set a date of March 21, 2008 for Mr. Lozano to

1 file his declaration, but he was "in transit" on that date, and Federal
2 Marshals had no record of him in their custody. Counsel was called by
3 pre-trial services on either March 27 or March 28 and was told that Mr.
4 Lozano was now back in Federal custody.

5     Counsel intends to visit with Mr. Lozano tomorrow to get specific
6 accurate details for the declaration and once the declaration is
7 completed and printed out, counsel will visit with Mr. Lozano again for
8 a signature. It is hoped all this can be accomplished by this coming
9 Friday, April 4, 2008, so the defense respectfully requests permission
10 to file this declaration after the imposed deadline because
11 circumstances beyond counsel and defendant's control delayed the ability
12 to get the declaration done on time.

## IV.

### THE COURT SHOULD GRANT LEAVE TO FILE FURTHER MOTIONS

In order to properly present additional pretrial motions, Mr. Lozano needs more information which may be provided through counsel's discovery request. As more information comes to light and as additional research and/or investigation is completed, additional substantive motions may be necessary. Accordingly, Mr. Lozano requests that the Court permit his to file further motions before trial.

## V.

### CONCLUSION

For the foregoing reasons, Mr. Lozano respectfully requests that the Court grant his motions.

**Respectfully submitted,**

**Dated: March 31, 2008**       s/ *Holly S. Hanover*
                                        **Attorney for Mr. Martin Morales Lozano Vargas**
                                        **E-mail: Netlawyr@aol.com**